Thank you for coming and we're ready for the argument in 14-1475, SpeedTrack v. Office Depot, Mr. Geiser. Thank you, Your Honor, and may it please the Court. SpeedTrack's lawsuit presents new issues and new claims that have never been resolved in any court. Under traditional preclusion analysis, this lawsuit would proceed, but under the district court's analysis, SpeedTrack's suit is barred under a patent-specific departure from the uniform rules applied in every other circuit. Well, what do you mean by new claims? Because it's the doctrine of equivalence as opposed to literal infringement? Is that what makes it new and different in your opinion? That's what makes it a new issue. What makes it a new claim is these are actually suits against different defendants. They involve different transactional facts and these defendants are not in privity with the defendants from the Walmart action. Is there anything in the record that would indicate that the product itself is different? Well, the software itself is a component of the method that is accused in this case. The software is combined with other components, including hardware, software, and data from each of these defendants. We're not accusing the software. The software in a box does nothing. We're accusing the practice of the method, which each defendant does on its own. These are independent companies. This is uncoordinated activity. And it's not the case that just because a defendant happens to use the same software in a way that might look an awful lot like a different defendant's independent use of the same software, that these all give rise to a single claim. That would not form what this Court has looked at as a convenient trial unit. But didn't the lower court give you an opportunity to establish that any of those differences are actually relevant to the infringement argument? Relevant for the infringement for literal infringement, but doctrine of equivalence is a completely separate issue, and that is one of the components for claim preclusion purposes that the Court looks at, but it's not the only one. Even in Acumed that looked at essentially the same standard, said it was only one of the factors that the Court considers. What's really critical here is this is not the same claim. Again, these are different defendants. It involves different time periods. These defendants are doing their own activity in their own way. By claim, you don't mean patent claim. This is the same patent claim you're asserting. Yes, Your Honor. Same cause of action, which I'm sorry, creates confusion in this area. Nowhere before the District Court or before this Court have you explained what is meaningful for purposes of infringement in terms of any differences in how the software is employed. You can't practice the method without the software, right? That's true. It's one component of the method, but again, that would be relevant if we were asserting a literal infringement claim, or proceeding under the doctrine of equivalence, which presents an entirely different issue. Okay. How? You're still not answering the question. So what is it about the doctrine of equivalence? You're saying that under the doctrine of equivalence you could use numbers and still infringe, right? That's correct. But what else about the other ways that they use the software is meaningful to your claim? Their other use of the software is essentially the same as the use of the software on Wal-Mart. We can see that. But that is not dispositive for claim preclusion, and it's certainly not dispositive for issue preclusion. So separating the two issues, you first have the claims at issue in Wal-Mart. Those are barred. The claims are actually adjudicated. They're barred and gone forever, under any theory of infringement, literal or equivalence. Those claims were adjudicated. But the claims at issue in Wal-Mart only involve Wal-Mart performing the method. Now, they were using the same software, but that's only one of the factors that you look at. Now, I think I understand. So your answer is the only reason you say that transactional facts are different is that it's a different person doing it? It's a different person at a different time. They're using their own hardware, software, and data. What is relevant about the use of their own hardware, software, and data? You've never answered that question? Your Honor, there's nothing relevant that's materially distinguishable with the way that each separate defendant in their own factories, in their own independent way, their own uncoordinated conduct, it might look exactly the same. Our contention is that is not dispositive for claim preclusion purposes. It's still a different claim because that is only one of the essential factors to look at what Acumen said in determining whether this is the same claim for claim preclusion purposes. And your argument is under the Kessler Doctrine that we should just ignore it because it's old? Absolutely not, Your Honor. Our argument is that Brain Life misread the Kessler Doctrine, and we respectfully submit that one way to resolve this case would be to reconsider Brain Life, but we don't need to do that to prevail here. Well, what is it, I mean, Brain Life, we don't need Brain Life, do we, to respond and dispose of this case? This case is closer to what is an MGA, a 1987 Federal Circuit opinion. I don't believe so. I mean, I don't, Brain Life presents sort of a different issue than is presented in this case. Even in the absence of Brain Life, would this court referring to Kessler and then as relied on by the, as an MGA, what's our opinion, 1987, would reach the same result of an affirmance, whether or not Brain Life existed at all? Absolutely not, Your Honor. MGA correctly characterized Kessler as an early form of defensive collateral estoppel, defensive issue preclusion. In our case, the district court correctly rejected issue preclusion. They did that because the issue of literal infringement is different than the issue of equivalence infringement. And even if you disagree with us on some components of claim preclusion, that only knocks out part of the claims at issue in this case, not the entire case. The only way that the district court's judgment can be supported in full is by its reading, and what we submit as a misreading of Brain Life, and its misreading of the Kessler Doctrine. Well, so what, are you saying, I mean, your argument against the Kessler Doctrine is that it's inconsistent with other preclusion analyses. But, I mean, that's what we recognize in Brain Life. But it's out there. I mean, we're not creating a patent-specific rule. The Supreme Court created it. Your Honor, we emphatically disagree with that. I think a proper reading of Kessler shows that this is effectively an anti-suit injunction case. It had nothing to do with patents being different. It didn't even focus on the word patent in the last two pages of a four-page opinion. It looked at the specific harm to the manufacturer in that case to justify this extraordinary remedy of an anti-suit injunction. It had to do with a concrete showing that the manufacturer had no adequate remedy to prevent relitigating these cases because, at the time, the defendant customers couldn't invoke issue preclusion because we lived in the old world. Now, Kessler is obsolete today precisely because, in today's world, customers, such as the defendants in this case, can invoke issue preclusion to bar any legitimate issue that actually was decided and resolved in the earlier case. It just so happens that, in this case, we have a new issue. We have an issue that wasn't resolved in the earlier case, just as the district court held below. But are we allowed to overrule Supreme Court precedent? Your Honor, it's not overruling Supreme Court precedent. It's actually just cabining it to its footprint. It's recognizing, as MGA recognized, that Kessler effectively was mimicking defensive collateral estoppels. You don't have to overrule Kessler at all. You just need to cabin it to what it actually resolved. And it did not look to providing extensive preclusion, preclusion beyond issue preclusion, beyond claim preclusion. Kessler was rooted in protecting the judgment. And it said this repeatedly. It says you need to preserve the rights and the judgment. You need to prevent the manufacturer's judgment from being destroyed. The judgment captures the claims adjudicated in the case and the issues adjudicated in the case. The judgment doesn't capture issues that have never been tried in any court and claims that have never been tried in any court. That's where we submit the brain life, and respectfully, we think misread Kessler. Kessler was not a patent-specific case. It had no hook in Title 35. It didn't mention patents specifically. It violates what today the Supreme Court has called the uniform rules of preclusion. Now the rules of preclusion are not uniform if you apply this patent-specific exception just for patent cases. Kessler properly understood is an anti-subconjunction case. It's saying that at the time, because defendants couldn't adequately invoke issue preclusion, which is different today, that the manufacturer needed this really extraordinary remedy. That's just not true in today's world. And so we're not overruling Kessler. We're just saying read it to say what it did. Read it to avoid a conflict with today's preclusion cases in the Supreme Court because this isn't just filling a gap. When the Supreme Court draws a line and says that these cases are protected, they're not precluded, and these cases are precluded, if you move that line, you're not filling a gap. You're precluding cases that the Supreme Court says, following fundamental due process interests, should proceed. This is actually recalibrating this very fine, careful balance that's supposed to be uniform among all the courts with all cases in every circuit. And we submit that right now that isn't true for brain life. But this court doesn't need to reconsider brain life to resolve this case because there are ways to distinguish customer suits, which is what this is. This is a very different question than what was decided in brain life. This is not a suit against a manufacturer. It's a suit against a customer. That's a question that was explicitly observed. But here they try to, yes, so what happens is if we were to decide that, then we go back and the judge allows them to intervene, and then we're back where we started. Well, Your Honor, we don't think the judge should permit them to intervene. We think that this would cause delay and prejudice to speed track in exactly the same way that the district court found delay and prejudice. Yeah, but let's assume you're wrong about that. Let's assume the district court is not persuaded, and she allows them to intervene, and we've got a very presumably deferentially likely agree with her. So we're back where we started, right? It is true that if they do intervene, we'll be back where we started. And then either brain life will be front and center, and either the full court reconsidered or not. But we have a separate reason for distinguishing this case, and that's under the Supreme Court's rubber tire exception. Rubber tire was a strict limit imposed on Kessler, and it said that once a product is deemed protected, that limited trade right, in a first action, that trade right dissipates. It vanishes once that product is combined with any other components. But in that case, it was combined with other components to make the patented product. Here, again, you still haven't told us what any, it's not, they didn't just say you can combine it with, you know, with sugar or a shoehorn. They said you have to combine it with other components to actually make the patented product. So here, you're combining it with other components, but you haven't told us how those components relate to practicing the patented method. You know, they relate exactly to practicing the patented method. What we were saying earlier about essentially the same is just, is there a way that they're practicing the method that looks different than the way Walmart practiced the method? You can't practice the method just by obtaining the software. Each defendant obtains the software. They have to install it on their own hardware and software. They create category description tables. They create file information directories. They create search filters. None of this exists in the product out of the box. Each defendant has to do that on their own. That's exactly the same as taking the rubber and rubber tire, combining it with the wires, and making the shape of the wheel. It doesn't matter in rubber tire, and they said this explicitly. The Supreme Court did. Even if the tire looks exactly the same in the two suits, the trade right that attaches either to the tire itself or to the rubber as the component does not carry over to protect other defendants, even if they're producing exactly the same tire. The Supreme Court said this right, this trade right, which is limited, and it springs from the decree. If I recall the Supreme Court case, they just sold the rubber. What was patented was the tire. All Goodyear did was sell rubber. I'm struggling, as Judge O'Malley is, with figuring out. It seems to me this case is quite different. Your Honor, respectfully, it's not. The rubber is exactly the same as the software. You take the software, it's sitting in a box. We know from the Supreme Court's Microsoft case, software in a box can't perform a method. You have to run it. The defendants in this case, each four of them, there's evidence of this in the record, they can't just take the software and look at it. They perform the method by activating it on their own hardware, using their own software and their own data. They have to perform the method. This is a method that targets the way that they provide search functionality to their customers. They can't perform that functionality without implementing the software exactly the same way that a manufacturer with rubber can't create the tire without combining it with other features. It has lost its limited trade right because it's no longer a standalone product. That's really the key. I think that lines us exactly with rubber tire. If the court doesn't have further questions, I've seen him eating from our bottles. Why don't we save you a rebuttal. Thank you. Mr. Bauer. Thank you, Your Honor. Your Honor, in the Walmart case, this court affirmed that the Indeca software and its customers' use of that software don't infringe. You listen to their argument? That particular customer's use of the software. That particular customer. Indeca's software, you read their brief and they make it sound like these are completely independent of the opponent's briefs. You would read it to believe that all the customers are independent. He even just got up here and said, there's nothing concerted, they're acting totally independently and all of that. What Indeca got in the Walmart case was a declaration that its software doesn't infringe and it got a declaration that Walmart's use of that software doesn't infringe and what Indeca sought was a declaration that its customers' use doesn't infringe, literally or under the doctrine of equivalent. Those issues were squarely in the Walmart case. Well, the OE wasn't squarely in the Walmart case. Well, infringement was squarely in the Walmart case but so was doctrine of equivalence, Your Honor. First, Indeca's declaratory judgment claim asked expressly for a finding of no infringement. So when you say not in the case... Well, it was in the case for purposes of race judicata but it was not actually litigated. So if by litigated you mean, and I don't mean to sound like a lawyer, if litigated means the court didn't rule on the substance of the doctrine of equivalence. The doctrine of equivalence was litigated because it was put in in the declaratory judgment action. California rules required it to be in the case. The California local rules require their infringement contentions to identify the doctrine of equivalence. So in that sense, it was litigated because it was there. And, Your Honor, we need to step back. Doctrine of equivalence isn't a separate theory or an issue. It's what the evidence is. The issue is infringement. You need to go through each claim and you get to say, I have evidence that the claim literally covers, each element literally covers, or I have evidence that there's, on that element, it's equivalent. It's a question of what's the evidence you're putting in. It's not a separate theory. And they did put in on some elements that they were going to introduce evidence under the doctrine of equivalence. If you look at their infringement contentions, so in the record, Your Honor, that we submitted to the court, the infringement contentions were A968 to 974. Unfortunately, in preparing, we didn't put into your appendix the entire infringement contentions. They are in the record, so if you wanted to see them. But other elements, other elements, they did point to the doctrine of equivalence. They knew that they had an obligation to put the doctrine of equivalence into this case. But what's important under this is for an A968 the infringement contentions, first they point to all versions of the platform. This is on page A968. They think all versions of the INDECA platform operate in fundamentally the same way. So the fact that there's newer versions, irrelevant. But more importantly, in terms of the INDECA software, on page A969, here's their infringement contention. It's the forged portion of the INDECA software that's accused. And then they say INDECA's so-called dimension values are the category descriptions. It's what comes out of the software. And so your Honor keeps asking what's the difference, and I think he just concedes as the software operates, it is identical. The district court found essentially the same. They don't take issue with that. But if it's a method claim that's at issue, the software is only one component, arguably, of that. But the elements at issue here are these identical issues. What's in 969, the INDECA dimension values, what comes out of the INDECA software, where it talks about the forged portion of the INDECA software. And then it says Walmart produces it in its computer. Your Honor, the way to think about this may be... Wait, wait, wait. You're reading from the second under A? That's right, Your Honor. That's right, Your Honor. So in that first paragraph, it talks about the forged portion of the INDECA software. At the end of that first paragraph, it says INDECA's so-called dimension values are the 360 patents category descriptions. And that's what we're talking about, the category descriptions. Well, how do you get around, though, the rubber tire? Rubber tire isn't this case. So first of all, rubber tire isn't an exception to Kessler. In rubber tire, they were trying to expand Kessler. So rubber tire... I have a hard time with that concept, given that rubber tire expressly says that Kessler is limited to its narrow circumstances. It doesn't, I don't think, say it. Your Honor, if you read it, and I know you have, what it says is that Kessler... I'm not going to... It's semantics, I guess. Is it expanding or is it narrowing? What rubber tire says is Kessler is limited, is about selling the product. And in rubber tire, they were going to the components, the rubber. And so if you read Kessler, here's exactly the language in Kessler. It says... Let me just get it. I had it just out here. I'm just not going to... The question becomes... Oh. The question in Kessler was about the product. The product itself. And the ability to sell the product. The patented product. I'm just not getting that quote right in front of me right now, Your Honor. But here's what Kessler said. It's the customer's right to use this technology. Our product doesn't infringe. That's a fact. The Indeka product doesn't infringe. A customer's use of that Indeka technology doesn't infringe. And you can't simply say, now we're going to go to another customer that's using it exactly the same way. This isn't components. So, Your Honor, what they're saying is... Think about it just like a word processing program, where the patent is on the word processing program. And their argument is, you buy a Microsoft word processing program, and the patent covers word processing. And you put it on an IBM PC or an Apple PC. It's still the software that's running. And what they're saying is, if you type something different, the data that comes out is different. Because you type a book and you type a case decision. So they're saying it has to do with the machine that it's running on and what comes out. Well, that's not what the patent is directed to. The patent was directed to what the Indeka software does. And that was all of the proof they offered in the Walmart case. Exactly the proof they offered in the Walmart case. And that's exactly what's at issue here. Rubber tire went to rubber. And if you look at the rubber tire case, they say it's the product that is immune from infringement. And by the way, that gets to why it doesn't matter if it's the customers that do this. Because both in rubber tire and this court... And this is why Kessler still is vibrant today. They're saying it's the thing that doesn't infringe. That's why you need a patent-specific or maybe it's an IP-specific. It's the thing. So rubber tire says it's the product that doesn't infringe. It doesn't matter who the parties are. If it's a limited trade right, though, even if the customers are ultimately protected, shouldn't Oracle have had to intervene in the lower court? So Oracle or Indeka intervened in the first case. Right. And then they intervened in the second case. It never got that far. There was never even an answer in that case. That case was stayed. So first, everybody knew Oracle was in that case. I'm representing Oracle in those cases. They knew. Everybody knew. The judge knew. Everybody knew. Oracle hadn't appeared. When you say they knew it was in the case, it didn't actually intervene. It wasn't actually in the case. It didn't intervene. It never got to the stage of an answer. The parties moved to stay it. Everybody told the court, we're staying this because it's the same technology. The first case is going to affect this case. Everybody, that's what the court was told. Oracle hadn't intervened there. When they raped, the customers moved to dismiss, and it was allowed. The case law supports the customers moving to dismiss. They have one case from 1926, a Sixth Circuit case, that was a two-to-one decision. And the dissent, if you read the dissent, you could almost plagiarize it for here. But that was the one case they had where they said no. Every court since then has said it's a right to the product that the customers could raise. But, Your Honor, you don't need to remand to get Oracle. You had asked about if we remanded, would the court just let us intervene again, let Oracle intervene again, which he did in the first case. You don't need to do that here. Oracle sought to intervene in this case after they raised the issue here on appeal. And they opposed it, and the court kept Oracle out. But, Your Honor, when they... Well, but if we're reviewing the judgment that was premised on Kessler, the intervention would have had to have occurred at the lower court level. But, Your Honor, when they opposed... Well, I don't know that if Oracle has to be the one seeking the claim. I'm not sure that it needed to intervene first or here. I think it's the idea that it's the Oracle that's doing it. But, Your Honor, when Oracle moved to intervene, here's what they said in their opposition to that. Oracle's interests are adequately represented by the existing parties. Now, you can't say in opposition to Oracle intervening that their interests are adequately represented by the existing parties and then come into this court and say you have to just send it back because the existing parties can't raise the issue. They can't argue both. This is their language. Oracle's interests are adequately represented. They just don't get to now come in and say Oracle should be in the case. Your Honor, if you think Oracle should be in the case, you can vacate the order that this court entered, have Oracle in the case, and not have to remand it and ask Judge Hamilton for leave to put Oracle in to file the exact same motion that Judge Hamilton is... So there's just really... I just don't think you need to remand to ask her should you allow Oracle in to enter the exact same decision you just found. But if you do think Oracle has to be a party, you can allow Oracle in because they've moved to intervene. The fact is the case law doesn't require it. That's the only difference that you can find. Your civil procedure is a little bit off, I'm afraid. I mean, if someone is entitled to a judgment based on a legal theory, they have to obtain that judgment at the lower court level. They can't seek to obtain that judgment on appeal if we find that it only belongs to Oracle. The only way we could do that would be to remand for purposes of allowing intervention and then the court reentering her judgment, if that's what we thought. Well, Your Honor, I think if you read the cases, the case law, there's no requirement that... Do you think that there's any difference in the way that the method is practiced from customer to customer? There's none. None. And Judge Hamilton found it's essentially the same, and they just told the court that as to the patent issues, there's no difference. As to the patent issues, no difference at all. There's none in the record. She gave them the opportunity to take discovery. They didn't offer any difference that is material, and they just told Your Honors, in response to your question, that there's no material difference here. Do you agree that we should simply find Kessler to be obsolete? Kessler is not obsolete at all. Kessler fills gaps. And what's the gap here? If you think that there needs to be... If you believe that the doctrine of equivalence evidence that they didn't put in would create a new issue of infringement, then you have to have Kessler, because what they're saying is any party could litigate literal infringement only, say nothing about doctrine of equivalence, even though California rules require it. Their position is the rules require it, they need to say nothing about it, don't mention it, litigate literal infringement, lose, and now they can file a new complaint under the doctrine of equivalence. In fact, their brief says they could sue Walmart tomorrow and allege doctrine of equivalence for all their subsequent use. That's in their brief, footnote 15, I believe. The issue is infringement. Section 271 is infringement. 282 says the defense is non-infringement. And the proof is infringement. Doctrine of equivalence is the evidence, the type of evidence you introduce on a specific element. Your Honor, I was looking for... I mean, this is a patent court, so you understand this. But best analogy is reading a contract. You offer a contract. You go to court, district court, say, I want to interpret the contract. It's my... I'm the plaintiff. Judge says, you want to put in parole evidence or you want me to read it literally? And the plaintiff says, you can read this contract literally, Your Honor, there's no ambiguity. Court says, okay, that's your case. Turns to the defendant, the defendant puts a witness on, offers parole evidence. Judge issues a decision saying, based on the evidence, I interpret the contract X. Plaintiff loses. Plaintiff's view is they can now file the lawsuit again and say, now we want to offer parole evidence and make another effort to interpret it. It's the same thing here. They had an obligation to say they wanted to introduce evidence under the doctrine of equivalence. Evidence ought to prove infringement. Obligation by our D.J. action, counterclaim. Obligation under the California law. They didn't do it. The judge excluded it. It was litigated, not on the substance, but on the procedure. This court affirmed, said they can't do it. It's no different than any of your other cases here, like that where people, Brain Life, where they dropped them method claims and went to seek, to file a new lawsuit later. Here they dropped the doctrine of equivalence evidence by not offering it. Made the decision not to offer it. Okay, your time is up. Okay, thank you. Oh, I thought I had 30 seconds left. I didn't see the record. Thank you, Your Honor. Thank you, Your Honor. First, Judge O'Malley is exactly right. You can't defend a judgment saying that a manufacturer could have obtained a very different form of relief below by intervening on appeal. And my friend, respectfully, I think you misspoke. This was decided on summary judgment motions. The motions that were dismissed were denied. This case proceeded for a year below. Oracle had every opportunity to intervene if that's what they wanted to do. They chose not to do that. For doctrine of equivalence, it does not matter what contentions were raised in Walmart It matters what was actually litigated and decided. And I think the record is emphatically clear. There's no ambiguity that doctrine of equivalence was not litigated or resolved. The same district court below also tried the Walmart case. This is the very basis for her decision rejecting issue preclusion. So I don't think there's any ambiguity there. As for whether issue preclusion should apply here, I think that my friend's argument can't account for two separate lines of authority in this court. The Bayer decision has already said that for preclusion purposes, infringement is not a single umbrella issue. I don't know why that would be different when you have literal and equivalence infringement, when you have and a commercial product. It's inconsistent with this court's line of authority in the mandate rule context, where it says the scope of the appellate judgment is coterminous with the scope of the issues raised on appeal. Infringement wasn't treated as a single issue, which is precisely why an appeal about literal infringement didn't resolve questions about equivalence infringement. And if you run through the factors in the restatement seconds of judgment, this is section 27 of the restatements. This is in our reply brief. You'll see that my friend, who hasn't even tried to explain how his theory can account for any of those factors, each point is decidedly against him. As for rubber tire, there is no transferable right based on the fact that the software that they're using happens to be the same when they give it to someone else.  You have to do more than just have the software. That's exactly the same as rubber tire, which said it didn't matter if the trade right was in the rubber or the trade right was in the tire. It didn't matter if each tire and each suit looked exactly the same. So even if it's not just essentially the same, exactly the same. If you have a different party constructing the same tire, even if it was deemed protected in an earlier suit, it did not matter for purposes of Kessler. And it was a strict limitation on Kessler. That's how other courts have construed it. Rubber tire also is limited to the rights and the decree. It said, and this is a quote from rubber tire, it sprang from the decree. That's how they described Kessler. An issue that is not resolved in that earlier decree is not an issue bound by that decree. And the same with a claim not resolved in that decree. It's not bound by the decree. This is why my friend's suggestion to read Kessler's authorizing preclusion in this context is not filling a gap. It's actually creating a direct split with this court and every other circuit, including the Third Circuit and the Fourth Circuit at the time where Kessler actually had relevance. And one final point with the court's permission. Kessler was rooted explicitly in the manufacturer's lack of an alternative legal remedy. The reason they lacked an alternative legal remedy is because there was no such thing at the time of non-mutual collateral estoppel. That precondition is gone under today's doctrine. Without that precondition, Kessler would come out the opposite way today. The proper way to read it is as defensive collateral estoppel, which is what this court's had in MGA. Thank you. We thank both counsel and the case that was submitted and that was approved by the committee. All rise.  Thank you, ladies.